UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | 2:11-CR-20540-TGB-RSW |
| Plaintiff, | |
| vs. | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (ECF. 651; 673)** |
| **(11) JIGAR PATEL**, | |
| Defendant. | |

Petitioner Jigar Patel was convicted after a jury trial of three counts of health care fraud (one conspiracy count and two substantive fraud counts) and one count of money laundering and sentenced to a term of 50 months incarceration and restitution in the amount of $1,952,095.90. Judgment, ECF No. 463.

Petitioner was a licensed physical therapy assistant, but he became involved in a wide-ranging health care fraud scheme that relied on him and many others to sign thousands of phony records indicating that physical therapy treatments were given when in reality they were not. Although the Government argued at sentencing that Petitioner should be held accountable for over ten million dollars in fraud loss caused to the Medicare system by the entire conspiracy and should be subjected to a guideline range of 121-151 months (Gov't Sent. Memo., ECF No. 447), the

1

Court found Petitioner responsible only for the fraud that he personally committed, about $ 1.9 million, and calculated the corresponding guideline range to be 78-97 months. Sent. Tr., ECF No. 514, PageID.7174-75; 7191. Having already calculated a guideline range lower than contemplated by the Government's Sentencing Memorandum, the Court then further varied downward—based mainly on Petitioner's relative culpability—and imposed a custody sentence of 50 months. *Id.* at PageID.7214-15.

Petitioner appealed his conviction and sentence and they were affirmed on appeal. Sixth Circ. Ct. of App. Op., ECF No. 594.

Petitioner has filed two motions under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence (the second of which is characterized as a motion to amend the first). ECF Nos. 651; 673. Considering the grounds advanced in these two motions (and subsequent pleadings) together, Petitioner advances seven claims. Five of these contend that he was denied effective assistance of counsel for (1) failing to allow Petitioner to testify at trial; (2) failing to raise an *Alleyne*-based claim that the jury should have found the facts supporting certain guidelines enhancements; (3) failing to request an evidentiary hearing on restitution; (4) failing at the appellate level to raise the *Alleyne*-based claim; and (5) failing to object to alleged *Brady*, *Giglio*, and *Jencks* violations by the Government. The two remaining claims allege sentencing errors: (1) that Petitioner should be re-sentenced under

2

"Amendment 791" to the U.S. Sentencing Guidelines; and (2) that Petitioner's restitution should be recalculated to avoid double counting of losses associated with Chetan Patel, a physical therapist employed by Petitioner. None of these claims have any merit except the last one; the Government concedes and the Court agrees that the restitution amount double counted certain billings where both Petitioner and Chetan Patel falsely certified treatment had occurred. Consequently, the motion will be denied in part and granted in part.

## I. Standards of Review

### A.   Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Prejudice arises when counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "A court need not determine whether counsel's performance was deficient, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Crawley v. Curtis*, 151 F. Supp. 2d 878, 883 (E.D. Mich. 2001) (citing *Strickland*, 466 U.S. at 697).

**B.    Sentencing Errors**

The applicable Sentencing Guidelines are the ones in "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii). A federal court "[m]ay not modify a term of imprisonment once it has been imposed." *Dillon v. U.S.*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). An exception is provided "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id.* The Sentencing Commission may amend the Guidelines, but any reduction must be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(2). Amendment 791 took effect in November 2015 and its effect was to alter the amount-of-loss table in Guideline § 2B1.1 that applies to fraud crimes. The Sentencing Commission's Policy Statement effective November 1, 2015 is that the Court may only reduce a sentence under 18 U.S.C. § 3582(c)(2) as a result of an amendment to the Guidelines Manual based on the specific amendments listed in § 1B1.10(d). Amendment 791 is not listed in § 1B1.10(d).

## II. Discussion

**A.    Ineffective Assistance of Counsel Claims**

**i.    Failing to Allow Petitioner to Testify at Trial.**

Petitioner notes first that he did not testify at the trial, and that he believes his testimony could have benefitted his case. ECF No. 651,

he

PageID.8116. Petitioner says that he only spoke with his attorney once about testifying,[1] and that his attorney did not "[go] over the pros and cons of me testifying." *Id*. He says that he now understands that "my testifying would have clarified many things," *id*., and that "[h]is testimony would have cleared him" of the money laundering charge. ECF No. 662, PageID.8186.

"The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *United States v. Johnson*, 627 F.3d 578, 582 (6th Cir. 2010). "The defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). "Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *Id.* (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). This is because it is presumed that defense counsel followed the professional rules of conduct and consulted with the defendant on important decisions in the course of the prosecution. *Id.* (citing *Strickland*, 466 U.S. at 688-90). "Barring any statements or actions from the defendant indicating disagreement with

---

[1] Petitioner also contends that the record does not contain additional personal conversations between Petitioner and counsel about Petitioner's decision to testify. ECF No. 662, PageID.8186.

counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Id.* "At base, a defendant must 'alert the trial court' that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Id.* (citing *Pelzer v. United States*, 105 F.3d 659 (table), 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997)). "When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct." *Id.* "Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id.* (citing *Joelson*, 7 F.3d at 177).

Here, there is no evidence that Petitioner either made an open expression of his desire to testify or any evidence that Petitioner's counsel or the trial court ignored Petitioner's desire to exercise his right to testify. Nor is there evidence that Petitioner attempted to communicate with and "alert the trial court" to a disagreement with defense counsel regarding whether he should take the stand. Indeed, during trial, the Court had counsel conduct a colloquy on the record with Petitioner to "determine whether or not the – each of the defendants are aware that although you've rested, they did have the opportunity to – have the opportunity to testify on there [sic] own behalf and that they choose not to do so." ECF No. 485, PageID.4634. In the colloquy that followed, Petitioner stated

7

that he had ample time to discuss the pros and cons of testifying with counsel, that he chose not to exercise his right, that he knew he could if he wanted to, that no one was preventing him from testifying, and that this was his own decision. *Id.* at PageID.4636-37. "These declarations concerning the performance of [Petitioner's] counsel were made in open court under oath and thus carry a strong presumption of veracity." *Parris v. United States*, 2009 WL 454630, at *4 (E.D. Mich. Feb. 24, 2009) (collecting cases). *See also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). In light of these statements made by Petitioner at trial, and Petitioner's failure to relay any of the "personal conversations" between Petitioner and trial counsel that would provide any specific evidence contradicting these sworn statements, trial counsel's assistance was effective with respect to Petitioner's right to testify.[2]

Within this claim Petitioner also challenges the sufficiency of the evidence behind his money laundering conviction, arguing that the Government did not prove beyond a reasonable doubt that any

---

[2] Additionally, Petitioner has not shown that he was prejudiced because of the alleged deficient conduct by his counsel. Under *Strickland*, the Court need not consider the prejudicial prong because Petitioner has not established the deficient performance prong. *Strickland*, 466 U.S. at 697.

concealment occurred. ECF No. 662, PageID.8187-88; ECF No. 673, PageID.8245-47. These are the exact arguments Petitioner made on direct appeal and were rejected by the Sixth Circuit. ECF No. 594, PageID.7823. They will not be considered here. *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (an argument previously addressed and rejected on direct appeal may not be relitigated through a § 2255 motion, absent exceptional circumstances such as an intervening change in the law).

> ### ii. Failing to raise an *Alleyne*-based claim that the jury should have found the facts supporting certain guideline enhancements at the trial and appellate level.

Petitioner argues that his counsel did not raise a claim under *Alleyne v. United States*, 570 U.S. 99 (2013) during the sentencing hearing, and that this failure resulted in a 4-level enhancement to his guidelines range. ECF No. 651, PageID.8129-30. He contends that the *jury* should have been tasked with finding beyond a reasonable doubt the two-point enhancement for the use of sophisticated means during a health care fraud scheme under Guideline § 2B1.1(b)(9)(C), and the two-point enhancement for the use of sophisticated laundering methods (use of a shell company) under Guideline § 2S1.1(b)(3). ECF No. 662, PageID.8191. Petitioner argues his counsel erred in failing to object pursuant to *Alleyne* when the Court engaged in its own fact-finding on these enhancements. *Id.*

In *Apprendi v. New Jersey*, the Supreme Court concluded that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime that must be admitted by the defendant or provided to a jury beyond a reasonable doubt. 530 U.S. 466, 490 (2000). *See also United States v. Booker*, 543 U.S. 220, 244 (2005). *Alleyne* clarified *Apprendi*, holding that "the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum." 570 U.S. at 112. "In other words, '*Apprendi*'s definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor.'" *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013) (quoting *Alleyne*, 570 U.S. at 108 (plurality opinion)). Accordingly, under *Alleyne*, "[f]acts that increase the mandatory minimum sentence are therefore elements that must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 108.

Here, neither of the two-point enhancements applied by the Court had any impact on the mandatory minimum or statutory maximum of Petitioner's sentences. None of Petitioner's offenses of conviction carried a mandatory minimum sentence. The lowest statutory maximum sentence for any offense was 10 years, and the combined statutory maximum sentence was 50 years.[3] And Petitioner's sentencing guideline

---

[3] The maximum term of imprisonment for health care fraud conspiracy and health care fraud, aiding and abetting is 10 years. 18 U.S.C. §§ 1347,

range, including the four enhancement points, was 78 to 97 months, below the lowest statutory maximum sentence of 10 years. ECF No. 514, PageID.7191-92. In this case, Petitioner was sentenced to 50 months of imprisonment, a term between the mandatory minimum (0 months) and the mandatory maximum (120 months). Judgment, ECF No. 463. Therefore, the sentencing enhancements that the Court applied "did not change these statutorily prescribed ranges, but only the Guidelines range." *See United States v. Jackson*, 594 Fed. Appx. 297, 300 (6th Cir. 2015). Accordingly, the Court's actions did not implicate *Alleyne* or *Apprendi* and it would have been unsuccessful had defense counsel brought a claim pursuant to either motion. *See id.* (explaining that "[i]n a number of subsequent cases, we have followed the Court's guidance in *Alleyne*, and refused to extend the decision to apply to sentencing-level enhancements under the Sentencing Guidelines.").

Because defense counsel has no duty to bring a legally baseless claim, *United States v. Martin*, 45 Fed. Appx. 378, 381 (6th Cir. 2002), counsel here was not ineffective in failing to object pursuant to *Alleyne* when the Court applied the guidelines enhancements in question. And just as the Court determined that trial counsel was not ineffective in

---

1349. The maximum term of imprisonment for money laundering, aiding and abetting is 20 years. 18 U.S.C. § 1956(a)(1)(B)(i).

failing to raise an *Alleyne*-based claim, the Court finds the same regarding appellate counsel.[4] *Id.*

### iii. Failing to request an evidentiary hearing on restitution.

Petitioner raises a number of claims with respect to the Court's restitution calculation. Here, the Court will first consider Petitioner's argument that trial counsel was ineffective when he failed to request a separate evidentiary hearing on the question of the amount of restitution. ECF No. 651, PageID.8131-32.

Generally, a sentencing court is not obliged to conduct a separate restitution hearing. *United States v. Cullinan*, 211 F.3d 1270 (table), 2000 WL 572019, at *1 (6th Cir. May 5, 2000) (citing *United States v. Smith*, 944 F.2d 618, 621 (9th Cir. 1991) ("[T]he [Victim and Witness Protection Act] 'does not require an oral hearing in order for the court to determine whether restitution should be awarded and the amount thereof.'"); *see also United States v. Rochester*, 898 F.2d 971, 981 (5th Cir. 1990). Instead, calculation is traditionally calculated at the time of sentencing, as it was here, *see* ECF No. 514, and "the district court may rely on the presentence report to evaluate the factors relating to an order of restitution." *Cullinan*, 2000 WL 572019, at *1. As a separate restitution hearing was not required, it was not constitutionally deficient

---

[4] Petitioner's fourth claim under his theory of ineffective assistance of counsel. ECF No. 651, PageID.8130-32.

for counsel to fail to request a separate evidentiary hearing on the matter. The Court will discuss Petitioner's other restitution-related claims later in this order.

     v.    **Failing to object to alleged *Brady*, *Giglio*, and *Jencks* violations by the Government.**

     a.    **Summary exhibits under Fed. R. Evid. 1006.**

Here, Petitioner contends that the Government violated *Brady* when it failed to release the business records and other related documents that would show that Petitioner had any connection to the deals between Chetan Patel and First Care and that therefore the spreadsheets shown to the jury accounting for these losses[5] were unverified and unaudited. ECF No. 673, PageID.8240. As a result, Petitioner argues that he was found guilty and received a harsher sentence. *Id*. The alleged *Brady* documents are Chetan Patel's First Care Home Healthcare employment files and payments made to Chetan from co-defendant Tausif Rahman, the leader of the fraud conspiracy, and his related companies. ECF No. 684, PageID.8289.

Petitioner also contends that trial counsel failed to inquire about the accuracy of the spreadsheets and request the documents substantiating their claims. ECF No. 684, PageID.8286. Because his trial counsel failed to cross-examine Respondent's expert witness regarding

---

[5] Amounting to $349,329.79, as provided in the Affidavit in Support of the United States' Sur-Reply. ECF No. 669-2.

the contents of the summarized exhibits of these spreadsheets, the jury was led to believe that the summarized exhibits were in fact the evidence, which violates Fed. R. Evid. 1006[6] as held by *United States v. Richardson*. ECF No. 673, PageID.8241 (citing 233 F.3d 1285, 1294 (11th Cir. 2000)).

*Richardson* established that the use of summary exhibits is permitted so long as (i) it is supported by evidence in the record, (ii) previously presented to the jury, (iii) the court makes it clear that the ultimate decision should be made by the jury as to what weight should be given to the evidence, and (iv) the defense has the opportunity to cross-examine a witness concerning the disputed issue and to present its own version of the case. *Richardson*, 233 F.3d at 1294. The petitioner in that case appealed her conviction for embezzlement, money laundering, and mail fraud. She claimed that the trial court's admission into evidence of summary evidence with legally conclusory labels constituted reversible error. *Id.* at 1288. However, the court rejected petitioner's argument because the trial court provided numerous limiting instructions to the jury and because the government witness testified that the labels on his summary exhibits represented his opinion. *Id.* at 1294. The court

---

[6] "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination, or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." Fed. R. Evid. 1006.

reasoned that sufficiency of these factors diminishes the likelihood of any error in admitting summary evidence. *Id.*

In this case, Petitioner relies on the *Richardson* factor that a defense's opportunity to cross-examine a witness diminishes the likelihood of any error in admitting summary evidence. ECF No. 673, PageID.8241. Petitioner argues that because defense counsel did not cross-examine a witness regarding the use of summary exhibits, the likelihood of error in the use of summary exhibits was not diminished and therefore the likelihood of error prejudiced him. *Id.* But failure to cross-examine by itself does not establish erroneous use of summary exhibits. It merely increases the potential  that the summary exhibits could have been used erroneously. Under *Strickland*, Petitioner must establish that the failure to cross-examine the witness did in fact prejudice him. 466 U.S. at 690. Moreover, Petitioner needed to show that defense counsel's decision to not cross-examine the witness was unreasonable. *Id.* at 687. Petitioner has not done so. The Court therefore rejects this argument.

Next, Petitioner argues that his counsel failed to properly object to the Government's violations of Federal Rule of Evidence1006, which requires the prosecution to provide original records, or even duplicates, of the data. ECF No. 673, PageID.8240. This argument has some merit but ultimately fails.

15

Petitioner relies on *Arias-Izquiedo*, which ruled that Fed. R. Evid. 1006 allows for the admission of a summary of voluminous business records so long as the defendant is provided "original records upon which the summary is based—or duplicates of these originals—prior to the admission of the summary." *United States v. Arias-Izquiedo*, 449 F.3d 1168, 1184 (11th Cir. 2006). In that case, petitioner was found guilty of aircraft piracy and conspiracy to commit aircraft piracy. In proving its case, the prosecution sought to introduce a summary report from the airline showing that petitioner and his co-conspirators had previously been passengers on the same route. *Id*. at 1183. The petitioner argued that the exhibit did not qualify as a summary because the prosecution failed to produce the underlying originals or copies of the documents after he made the request for the government to do so. *Id. Arias-Izquiedo* held that because the government did not provide the defendants with the original handwritten records or duplicates supporting the summary exhibits, it was error for the district court to have admitted the documents at trial. *Id*. at 1184. However, despite the finding of error, the court refused to overturn petitioner's conviction because he failed to prove substantial prejudice resulting from the error. *Id*.

Petitioner also relies on *Gordon v. United States*, 438 F.2d 858 (5th Cir. 1971). There, the accused was found guilty of a conspiracy to misapply funds of a bank and of making false entries in records of a bank. *Id*. In making its case, the prosecution used a federal agent who then

16

used charts to summarize the "complex, intricate, and labyrinthine" evidence. *Id*. at 877. *Gordon* reasoned that in using summary charts, "the better practice is to require that the primary evidence be available to the opposing party and to afford a reasonable opportunity for comparison in order that the correct of the summary may be tested on cross-examination." *Id*. at 876-77. The court affirmed the district court's decision to admit the summary charts because it found that, among other factors, "all documents relating to each transaction summarized in the charts were available for verification." *Id*. at 877.

The Sixth Circuit states that under Rule1006, the government has a "duty to 'state when and where' the documents underlying its summaries could viewed, without regard to whether [defendant] made a request for these records." *United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002). *Modena* states five requirements for the admission of an evidentiary summary: "(1) the underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation." *Id*. at 633. There, the defendant was convicted of conspiracy to defraud the United States because of his participation in a tax evasion

17

scheme. *Id.* at 629. The government informed defendant that "upon request, it would make any records intended for use at trial available for inspection." *Id.* at 633. The government also attached a condition on defendant's right to examine or copy. *Id.* The defendant appealed, arguing that the district court improperly allowed the government to present inadmissible summaries of the evidence. The court determined that the government's conduct violated Rule 1006 because the government needed to state specifically "when and where" the documents underlying the summaries could be viewed and because the government attached conditions on the right to examine or copy records underlying the summaries. *Id.* 633.

Here, Petitioner argues that he received ineffective assistance of counsel because his attorney failed to object to the Government's use of summary exhibits. ECF No. 684, PageID.8286. The Government argues that Petitioner has provided no evidence that the summary exhibits entered into evidence did not comply with Rule 1006. ECF No. 682, PageID.8275. But a look through the Government's "Discovery Notice" finds errors like those articulated in *Modena*. ECF No. 117, PageID.258. *Modena* ruled that Rule 1006 does not allow the government to place conditions on the defendant's right to examine or copy records underlying a summary. 203 F.3d at 633. But in this case the Government imposed conditions, by stating that "compliance with any specific request will trigger the defendant's duty to provide the reciprocal discovery denoted

in Fed. R. Crim. P. 16(b)(1)(A)-(C)." ECF No. 117, PageID.258. Furthermore, it was not enough that the Government provided the following notice that "[u]pon specific request of the defendant, the government will make available for inspection or copying the items… [relating to the summary exhibits]." *Id*. Under *Modena*, the Government is required to state when and where the documents underlying its summaries could be viewed. For these reasons, counsel's failure to object to the admission of summary exhibits was ineffective because it appears on the available record that the Government did not fully comply with the *Modena* court's requirements under Rule 1006. *See Strickland*, 466 U.S. at 690. The Court finds that Petitioner has thus established prong one of the *Strickland* test. *See id*. However, Petitioner has not satisfied the second prong of the test because he offers no explanation as to how this deficiency caused any prejudice.  Petitioner offers no evidence that the information contained in the summary exhibits was inaccurate or misleading.  Considering the overall weight of the evidence establishing Petitioner's guilt, counsel's failure to object to the summary exhibits did not result in any identifiable prejudice. *Id*. at 687.

### b.    Immunity Agreement with Chetan Patel.

Petitioner contends that because Chetan Patel was not indicted in the healthcare fraud scheme, some immunity agreement must have existed between Chetan and the Government and that it was a *Brady*

violation for the Government to fail to disclose that to the defense at trial. ECF No. 673, PageID.8243-44.

The Government contends it was exercising prosecutorial discretion when it decided not to charge Chetan Patel. ECF No. 682, PageID.8777 (citing *United States v. Goodwin*, 457 U.S. 368, 380 (1982)). Further, the Government asserts that no immunity agreement with Chetan Patel exists and that Petitioner has provided no evidence that one existed. *Id*. at PageID.8278. Indeed, Petitioner admits in his amended § 2255 petition that Chetan Patel was not prosecuted "[f]or unknow[n] reasons." ECF No. 673, PageID.8243. These speculative and unsubstantiated claims are insufficient. This claim fails.

### c.   Failing to call Chetan Patel as a witness.

Petitioner contends that if counsel had called Chetan Patel, Petitioner would have been able to show that he had no involvement in the $339,412.54 billing between Chetan Patel and First Care. ECF No. 673, PageID.8244.

Petitioner also contends that if his counsel had called Chetan Patel as a witness, he would have been provided all of the associated *Jencks* material and that this material would have shown that Petitioner had no involvement in Chetan's business with First Care. *Id*. at PageID.8243. Petitioner admits that his counsel refused to have Chetan Patel testify as a witness at trial because he likely would have invoked his Fifth Amendment rights. *Id*.

20

The Court reiterates the hurdle that Petitioner must overcome to succeed on this claim. A petitioner seeking relief under § 2255 must identify acts "outside the wide range of professional competent assistance." *Strickland*, 466 U.S. at 690. It is insufficient to simply allege deficient performance by merely identifying counsel's refusal to call a witness, especially a witness who could invoke his Fifth Amendment rights and thus prevent the testimony from being presented that Petitioner believes would be exculpatory. In his brief, Petitioner even acknowledges this futility. *See* ECF No. 673, PageID.8244. This claim also fails.

**B.   Sentencing Claims**

> **i.   Petitioner will not be re-sentenced under Amendment 791 to the U.S. Sentencing Guidelines (*and related ineffective assistance of counsel claim*).**

Petitioner additionally argues that he is entitled to resentencing pursuant to the United States Sentencing Commissions' Amendment 791, which became effective in November 2015. ECF No. 673, PageID.8235-8238. This claim fails because Amendment 791 is inapplicable to his case.

On April 30, 2014 the jury convicted Petitioner of one count of conspiracy to commit health care fraud, two counts of health care fraud, and one count of money laundering. ECF No. 384. Petitioner was subject to a base level offense of six based on U.S.S.G § 2B1.1(a)(2). The Court

21

added sixteen levels as the loss amount exceeded $1,000,000 but was less than $2,500,000. § 2B1.1(b)(1). Two levels were added as the offense involved otherwise sophisticated means, § 2B1.1.(b)(9)(C), two levels were added because Petitioner was convicted of money laundering, § 2S1.1(b)(2)(B), and two levels were added because Petitioner created a shell company to launder the proceeds of the health care fraud, § 2S1.1(b)(3). This resulted in a total offense level of 28 and a guidelines range of 78 to 97 months, given Petitioner's criminal history category of I. ECF No. 514, PageID.7191-92. Nonetheless, the Court granted a downward variance and imposed a sentence below the guideline range to a total term of 50 months imprisonment. *Id.* at PageID.7214. *See also* ECF No. 463.

On November 1, 2015, the Sentencing Commission amended the fraud loss table which provided the basis for Petitioner's 16-level enhancement. This changed the 16-level enhancement from a loss greater than $1 million but less than $2.5 million to a loss of greater than $1.5 million but less than $3.5 million and would have lowered Petitioner's offense level from 16 to 14.[7]

The applicable Sentencing Guidelines are the ones "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii). Generally, a federal court "may not modify a term of imprisonment once it has been

---

[7] This is based on the newly calculated loss/restitution amount of $1,480,643.68 by the Government, discussed later in this Order.

imposed." *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). But "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Guidelines" the Court may reduce the sentence if the reduction is consistent with applicable policy statement issued by the Sentencing Commission. *Id.* (quoting 18 U.S.C. § 3582(c)(2)). With respect to the Sentencing Commission's Policy Statement that became effective November 1, 2015, it stated that "the Court may only reduce a sentence under § 18 U.S.C. § 3582(c)(2) as a result of an amendment to the Guidelines Manual based on the specific amendments listed in § 1B1.10(d)." *United States v. Williams*, No. 12-20272, 2018 WL 4181443, at *1 (E.D. Mich. 2018). As Petitioner acknowledges, the Sentencing Commission did not make Amendment 791 retroactive. *Id.* at *2 (citing U.S.S.G. § 1B1.10(d) (list of retroactively applicable amendments)) (collecting cases); *United States v. Conley*, 2019 WL 2403230, at *2 (6th Cir. 2019) (defendant not eligible for sentence reduction under § 3582(c)(2) because Amendment 791 is not listed in § 1B1.10(d)).

But Petitioner does not fashion his motion as a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). *See Williams*, 2018 WL 4181443 at *1. Rather, Petitioner requests application of Amendment 791 via his § 2255 motion. The Sixth Circuit has held that a § 2255 motion is the appropriate vehicle to use when the Sentencing Commission did

not make an amendment expressly retroactive by listing it in U.S.S.G. § 1B1.10(d). *Rivera v. Warden, FCI, Elkton*, 27 Fed. Appx. 511, 514-15 (6th Cir. 2001) (finding clarifying amendments that are not listed in U.S.S.G. § 1B1.10—and thus not retroactive for purposes of applying 28 U.S.C. § 3582(c)(2)—may be applied in a § 2255 proceeding). But in *Rivera*, the court emphasized that in order for an amendment to be applicable on a § 2255 motion, the amendment must be deemed "clarifying" rather than "substantive." *Id.* at 515 ("[I]f an amendment clarifies a sentencing guideline, rather than substantively changes a guideline, a sentencing court can reduce the sentence by applying the amendment retroactively, even if it is not listed in U.S.S.G. §1B1.10[ ]. But again, in such a case the prisoner files a § 2255 motion with the sentencing court.").

The Sentencing Commission expressly characterized Amendment 791 as a "substantive amendment." U.S.S.G., App. C. Supp. at 10. *See also Mackenzie v. United States*, 2017 WL 5502939, at *11 (D. Mass. 2017) ("It is evident that the Commission intended the adjustment for inflation under Amendment 791 to be a substantive change, not a clarification."); *Whetstone v. United States*, 2018 WL 2984690, at *4 (W.D. Mich. 2018). Therefore, this Court lacks authority to retroactively apply Amendment 791 to Petitioner.

Despite the fact that Amendment 791 is not retroactive, Petitioner asserts that two First Circuit cases support his position that the amendment should nonetheless be applied to his sentence. ECF No. 684,

PageID.8284. However, neither of these cases help him. First, as these decisions are from appellate courts outside the Sixth Circuit, they are not binding on this Court. Second, both cases deal with Amendment 709, which made substantive changes to the rules for determining when multiple crimes are counted as one for criminal history purposes; Amendment 709 is not relevant here. Third, neither of the unique procedural postures presented in these cases are applicable here.

In both *United States v. Godin*, 522 F.3d 133 (1st Cir. 2008), and *United States v. Ahrendt*, 560 F.3d 69 (1st Cir. 2009), the First Circuit considered a non-retroactive, substantive amendment to the Sentencing Guidelines that became effective after the defendant was sentenced and while the defendant's case was on direct appeal. The court acknowledged that neither it nor the district court was obligated to apply a non-retroactive amendment adopted after the defendant's sentencing. 522 F.3d at 135 (citing *United States v. Diaz-Cardenas*, 351 F.3d 404, 409 (9th Cir. 2003) ("[S]ubstantive amendments to the guidelines that occur between the date of sentencing and the resolution of an appeal have no retroactive effect unless specifically referenced in U.S.S.G. § 1B1.10.")). Nonetheless, the First Circuit decided to vacate the district court's sentence and remand for re-sentencing to give the district court the opportunity to decide whether the original or some different sentence should be imposed. *Id.* at 136. It clarified that the district court was free to continue to apply the Guidelines that existed at the time of the original

sentencing, but it was also free to consider the Commission's updated Guidelines. *Id. See also Ahrendt*, 560 F.3d at 80 (remanding for resentencing because of the similarities with *Godin*). *But see United States v. Matos*, 611 F.3d 31, 39-40 (1st Cir. 2010) (distinguishing *Godin* and *Ahrendt* and denying defendant's request for remand).

Here, Petitioner did not raise the issue on appeal and therefore *Godin* and *Ahrendt* are not on all fours with this case. Amendment 791 became effective November 1, 2015, two months after Petitioner filed his notice of direct appeal and seven months before the Sixth Circuit issued its opinion. ECF Nos. 541, 594. Petitioner therefore could have raised this specific argument on direct appeal. *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). And issues that could have been raised on direct appeal but were not are generally waived for purposes of a § 2255 motion. *Id.* "Moreover, an error in the application of the Sentencing Guidelines does not warrant collateral relief under § 2255 absent a complete miscarriage of justice." *Id.*

However, Petitioner also incorporates within this claim the argument that appellate counsel was ineffective in failing to raise this very issue on direct appeal. ECF No. 684, PageID.8285. Therefore, the question becomes whether it was ineffective for appellate counsel to fail to argue on appeal that while Amendment 791 is not retroactive, the Sixth Circuit should nonetheless remand to the district court to consider its substantive terms.

On that note, the Court must consider whether appellate counsel's conduct (i.e., their failure to argue the logic of *Godin* and *Ahrendt* on direct appeal) fell outside of the "wide range of professionally competent assistance" given the "strong presumption that counsel's performance f[ell] within the 'wide range of professional assistance.'" *Strickland*, 466 U.S. at 689; *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). The Court finds it does not.

First, *Godin* and *Ahrendt* are not binding precedent in the Sixth Circuit and Petitioner has not identified any Sixth Circuit case law adopting the full thrust of their holdings. To be sure, the Sixth Circuit joined the First Circuit and several other circuits in concluding that "the district court *can* consider subsequent amendments to the Guidelines for purposes of fashioning an appropriate sentence under the § 3553(a) factors." *United States v. Taylor*, 648 F.3d 417, 425 & n.3 (6th Cir. 2011) (emphasis added) (citing *Godin*). *See also United States v. Atkinson*, 354 Fed.Appx. 250, 253 (6th Cir. 2009) (unpublished decision) ("While it appears that [the relevant] amendment will be found not to have retroactive application, adoption of this change is something that the district court could have considered in its discretion.").

But even *Taylor* was considered under a dissimilar procedural posture. In *Taylor*, the defendant was sentenced by the district court, the government appealed, and the Sixth Circuit vacated the sentence, remanding the case to the district court for resentencing in accordance

with the Armed Career Criminal Act. On resentencing, the district court resentenced the defendant to the same term of imprisonment that it sentenced the defendant to originally. The defendant again appealed to the Sixth Circuit, arguing—among other things—that the district court failed to consider relevant amendments made to the Guidelines between the original sentencing and the required resentencing.

Therefore, while *Taylor* may have held that on resentencing it was an abuse of discretion for the district court to fail to at least *consider* the defendant's argument that a post-sentencing amendment to the Guidelines should be applied, it did not hold that it would be ineffective for appellate counsel to fail to argue on direct appeal that the district court should be permitted on resentencing to consider such amendments. Indeed, *Taylor* says nothing about the Guidelines amendment being the *catalyst* for resentencing. It merely states that if resentencing is to occur, the district court is obligated to consider a post-sentencing amendment to the Guidelines if the defendant argues it should be applied.

In sum, because Amendment 791 is not retroactive, and the Court can locate no authority for the proposition that the district court would be *obligated* to resentence Petitioner using Amendment 791's new financial loss tables had appellate counsel raised the amendment on direct appeal, the Court cannot conclude that appellate counsel was ineffective for failing to raise this issue on appeal, particularly considering the high bar that *Strickland* imposes. *See Whetstone v.*

*United States*, 2018 WL 2984690, at \*4 (W.D. Mich. 2018) (denying petitioner's § 2255 claim of ineffective assistance of appellate counsel for failing to raise Amendment 791 on appeal). This claim fails.[8]

### ii.   Petitioner's restitution should be recalculated to avoid double-counting of losses.

Petitioner makes two arguments with respect to the Court's calculation of the restitution he owes. The first can be easily discarded, and the second is meritorious.

First, Petitioner argues that the Court inappropriately added loss amounts that were not directly attributable to Petitioner's conduct, but instead to Chetan Patel, the physical therapist Petitioner recruited into the Medicare fraud scheme. ECF No. 651, PageID.8131-32. The Court calculated Petitioner's restitution amount as $1,952,095.90. ECF No. 463, PageID.3325. To reach this amount, it added the $918,101.33 that was associated with Petitioner to the $1,064,784.04 that was associated with Chetan Patel "because he was working for Mr. Patel and for [the Michigan Staffing company that Petitioner created]." ECF No. 514, PageID.7174. Petitioner argues that because Chetan Patel was never

---

[8] It is worth noting that Petitioner would have difficulty showing prejudice in any event because he received a sentence well-below his guideline range of 78-97 months. Indeed, even if the lower guideline range required by the changes to fraud loss table were to be applied, and even if he were not given the two-point enhancement for use of a sophisticated means, the new range would be 51-63 months, and his sentence was 50 months.

indicted nor testified as a witness in his case, the $1,064,784.04 associated with Chetan Patel was "not proven beyond a reasonable doubt by the jury." ECF No. 662, PageID.8190. Accordingly, Petitioner claims he should be held accountable for "only the loss amount due to his conduct and not Chetan Patel's conduct." *Id*. But Petitioner had already raised this argument on direct appeal, and the Sixth Circuit rejected it. ECF No. 594, PageID.7824 ("[Petitioner] argue[s] that, under the Sixth Amendment's right to a jury trial, the jury must determine the amount of restitution beyond a reasonable doubt. But we rejected that argument…Thus we reject it here."). For this reason, this claim also fails.

Petitioner's second argument with respect to restitution calculation is that some amount of double counting occurred between those Medicare amounts attributable to Petitioner and Chetan Patel. More concretely, that Petitioner was held accountable for some false patient charges twice when the fraudulent files were signed by *both* Petitioner and Chetan Patel. ECF No. 662, PageID.8189-90.

In its sur-reply, the Government agreed with Petitioner that some double counting occurred, attaching support from an affidavit by a special agent with the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations. ECF No. 669, PageID.8218; ECF No. 669-2 (Affidavit of Abhijit Dixit). The Government conducted an additional analysis of the relevant documents and concluded that the restitution amount should be amended to

$1,480,643.68. *Id.* It contends that the Court should vacate the existing restitution order and enter an order requiring Petitioner to pay $1,480,643.68 in restitution. *Id.* at PageID.8219. Having considered the record and relevant authorities, the Court agrees that double counting occurred with respect to Petitioner's calculated restitution amount. *See United States v. Esway*, 488 Fed. Appx. 969, 971 (6th Cir. 2012) (ordering the district court on remand to "correct the judgment to indicate" the correct restitution amount). Accordingly, the Court finds that the restitution amount be amended to $1,480,643.68.

## IV. Conclusion

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 18 U.S.C. § 2255 IS **DENIED IN PART** AND **GRANTED IN PART**. The Court vacates the restitution order entered for Petitioner, and orders him to pay restitution in the amount of $1,480,643.68.

**IT IS SO ORDERED**.

DATED: December 22, 2020.          BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

31